881 F.2d 1123
 279 U.S.App.D.C. 408
 PENNSYLVANIA PUBLIC UTILITY COMMISSION, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Equitable Gas Co., Equitrans, Inc., Pennsylvania Office of
Consumer Advocate, Public Service Commission of
West Virginia, Intervenors.
 No. 88-1446.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 25, 1989.
Decided Aug. 11, 1989.
As Amended Aug. 11, 1989.
 
 Veronica A. Smith with whom John F. Povilaitis, Harrisburg, Pa., were on the brief, for petitioner.
 Daniel P. Delaney also entered an appearance, for petitioner.
 Timm L. Abendroth, Atty., F.E.R.C., Washington, D.C., with whom Catherine C. Cook, General Counsel, and Joseph S. Davies, Deputy Sol., F.E.R.C., were on the brief, for respondent.
 Stephen E. McGregor with whom Jennifer K. Walter, John S.L. Katz, Washington, D.C., John N. Estes, and Daniel J. Kortum were on the brief, for intervenors Equitable Gas Co. and Equitrans, Inc.
 Kent D. Murphy, Harrisburg, Pa., with whom Philip F. McClelland, Westfield, N.Y., was on the brief, for intervenor Pennsylvania Office of Consumer Advocate.
 Richard E. Hitt entered an appearance, for intervenor Public Service Com'n of West Virginia.
 Before ROBINSON, D.H. GINSBURG, and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 Pennsylvania Public Utility Commission ("PPUC"), joined by intervenor, the Pennsylvania Office of Consumer Advocate ("POCA"), petitions for review of three orders of the Federal Energy Regulatory Commission ("FERC" or "the Commission") that permit intervenor Equitable Gas Company ("Equitable"), a local distributor and retailer of natural gas in Pennsylvania, West Virginia, and Kentucky, to transfer certain services and facilities to Equitrans, Inc., an interstate natural gas pipeline, as part of a corporate reorganization. Finding no error, we deny the petition for review and uphold the orders.
 
 I. BACKGROUND
 
 2
 Prior to the corporate reorganization that gave rise to the present controversy, Equitable provided service subject to both federal jurisdiction (i.e., gas transportation and sales for resale in interstate commerce) and state jurisdiction (i.e., distribution and sales to end users). On August 15, 1986, Equitable and Equitrans, a newly created subsidiary of Equitable's parent company, Equitable Resources, Inc., jointly filed application with FERC seeking authority for the reorganization. Equitable sought authority under section 7(b) of the Natural Gas Act ("NGA"), 15 U.S.C. Sec. 717f(b) (1982), to abandon its interstate service and associated facilities, proposing to transfer these facilities to Equitrans. Equitrans sought a certificate under section 7(c) of the NGA, 15 U.S.C. Sec. 717f(c), to operate the facilities and provide the jurisdictional services.
 
 
 3
 As required by FERC regulations, 18 C.F.R. Sec. 15,714(a)(6) (1988), the lengthy filing contained a full listing of the facilities to be transferred, including maps showing their locations. The maps labeled Equitable's transportation facilities, compressor stations, interconnections with state regulated distribution facilities, storage fields, and production wells in Pennsylvania and other states. The application also asserted that Equitable had followed the "functional classification" previously used in its FERC accounting records for segregation of interstate facilities from distribution facilities for purposes of calculating pro forma rates for Equitrans.
 
 
 4
 Finally, the application explained the applicants' rationale for the proposed corporate reorganization. The companies argued that Equitable, then subject to duplicative and possibly conflicting cost allocations under federal and state regulatory regimes, faced increased regulatory expenses and potentially inconsistent cost allocation, resulting not only in confusion but also potential deprivation of reasonable opportunity to recover legitimate costs. The companies next argued that the reorganization would permit Equitrans to operate the interstate facilities more competitively than could Equitable and at lower costs. In support of this contention, the companies argued that few of their competitors still operated as both interstate pipelines and local distribution companies, citing several examples of other companies already reorganized into separate transportation and distribution entities with FERC approval. See Williston Basin Interstate Pipeline Co., 30 F.E.R.C. p 61,143 (1985); Mountain Fuel Supply Co., 27 F.E.R.C. p 61,316 (1984); Consolidated Gas Supply Corp., 25 F.E.R.C. p 61,397 (1983); Iroquois Gas Corp., 51 F.P.C. 1507 (1974).
 
 
 5
 In September 1986, PPUC and POCA separately filed protests, opposing the Equitable/Equitrans application, contending, inter alia, that a hearing was necessary to determine which services and facilities were interstate and which were intrastate, and that the proposed transfer was anti-competitive, particularly because Equitable would likely become a captive customer of Equitrans and the Equitable Resources corporate family. POCA contended that the reorganization constituted "a brazen attempt to avoid effective retail regulation of its gas costs." Joint Appendix ("J.A.") at 36.
 
 
 6
 After a public hearing, FERC approved the joint application on January 20, 1988, and issued a certificate of public convenience and necessity authorizing Equitrans to acquire and operate Equitable's natural gas facilities. Order Issuing Certificate and Approving Abandonment, Equitable Gas Co., a Division of Equitable Resources, Inc. and Equitable Transmission Co., 42 F.E.R.C. p 61,023, 61,143 (1988). FERC noted that this type of corporate reorganization, resulting from the breakup of a local distributor serving both as a distributor and interstate transporter, was "a situation with which [it had] dealt several times in the past." Id. at 61,140. In approving the certificate, the Commission concluded that
 
 
 7
 [s]eparating distribution and transmission into separate companies will result in a more efficient operation and delivery of services, to the benefit of ... customers ... as well as the shareholders.... Furthermore, conflicting or duplicative determinations as to cost allocations [by FERC and state regulatory agencies] will be eliminated.
 
 
 8
 Id. at 61,141 (footnotes omitted). FERC conditioned its issuance of a certificate on, inter alia, the maintenance of specific rate factors, cost classifications, and tariff terms, and required Equitrans to "continu[e] to perform the currently existing interstate sales and services of Equitable Gas, and charging the same demand and commodity rates and charges." Id. at 61,143. Additionally, FERC concluded that because Equitrans elected to be an open-access transporter under FERC's Orders No. 436[1] and No. 500,[2] Equitable would be "able to deal directly with producers, marketers, brokers, and others to purchase all or a portion of its gas at the lowest available price." Id. at 61,141.
 
 
 9
 Finally, the Commission noted that an evidentiary hearing was unnecessary because "the protests [of PPUC and POCA] ... raise[d] no issues of fact material to the decision ..., nor ... alleged any facts which, if true, would require denial of the applicants' request for authorization to implement [the corporate] restructuring." Id. at 61,143. Instead, the Commission found that "the issues raised by [PPUC and POCA] involve[d] determinations of policy, not facts." Id.
 
 
 10
 On February 19, 1988, PPUC moved for a stay of the FERC order and requested rehearing. Application for a Stay and Request for Rehearing of the Pennsylvania Public Utility Commission, Docket No. CP86-676-000 (Feb. 19, 1988). PPUC reiterated its arguments and asserted that by the certification "the Commonwealth of Pennsylvania has been harmed in that an area of state jurisdiction has been summarily preempted by FERC without a hearing." Id. at 5, J.A. at 67. While FERC denied the stay, it granted rehearing "solely for the purpose of affording the Commission additional time to consider the request for rehearing." Order Granting Rehearing for Further Consideration and Denying Request for Stay, Equitable Gas Co., a Division of Equitable Resources, Inc., and Equitable Transmission Co., 42 F.E.R.C. p 61,342, at 61,971 (1988).
 
 
 11
 On April 20, 1988, FERC denied rehearing, rejecting PPUC's contention that PPUC's state jurisdiction was preempted. Order Denying Rehearing, Equitable Gas Co., a Division of Equitable Resources, Inc., and Equitable Transmission Co., 43 F.E.R.C. p 61,085 (1988). Quoting from its decision denying the stay, the Commission stated that the certificate authorized Equitable " 'to abandon only its interstate transmission facilities and operations, and to transfer those assets to [Equitrans].' " Id. at 61,263 (emphasis in original) (quoting 42 F.E.R.C. at 61,971). Because the certificate applied only to interstate facilities and operations, no state jurisdiction was preempted. FERC stated that "[t]he only relevant concern" was whether regulated activities will escape review, not whether a change will occur "in the respective responsibilities of the regulating agencies." Id. In this instance, FERC concluded, the reorganization would not free any division or subsidiary of the Equitable Resources family from regulation. FERC also dismissed PPUC's reassertion that an evidentiary hearing was necessary, holding that "no material factual issues were raised in the protests, nor ... in the request for rehearing. Rather, the PPUC merely assert[ed] its own conclusions" as to the effects of the reorganization. Id.
 
 
 12
 PPUC then filed the present petition for review. POCA has intervened on behalf of PPUC, and Equitable and Equitrans have intervened on behalf of FERC.
 
 II. ANALYSIS
 
 13
 Petitioner contends (A) that, by denying an evidentiary hearing, FERC violated petitioner's statutory due process rights under the NGA; and (B) that FERC's decision that the reorganization was consistent with the public interest was not supported by the record. We have reviewed each of these contentions under the standards mandated by the Administrative Procedure Act, 5 U.S.C. Sec. 706 (1982), and find neither of them convincing.
 
 A. Denial of Evidentiary Hearing
 
 14
 PPUC concedes, and we have often held, that a formal trial-type hearing is unnecessary where there are no material facts in dispute. See, e.g., Southern Union Gas Co. v. FERC, 840 F.2d 964, 970 (D.C.Cir.1988); Consolidated Oil & Gas, Inc. v. FERC, 806 F.2d 275, 280 (D.C.Cir.1986); Cerro Wire & Cable Co. v. FERC, 677 F.2d 124, 128 (D.C.Cir.1982). We find no error in FERC's conclusion that petitioner's allegations in the present proceeding did not put in dispute any facts material to the decision. 42 F.E.R.C. at 61,141, 61,143; 43 F.E.R.C. at 61,283. While petitioner offers several formulations of alleged issues of material fact, at bottom they are nothing more than allegations that Equitable was transferring to Equitrans facilities or assets of an intrastate nature under the interstate guise. Perhaps this constitutes an allegation of fact material to the decision of the Commission, but as we have previously stated, "mere allegations of disputed facts are insufficient to mandate a hearing; petitioners must make an adequate proffer of evidence to support them." Cerro Wire & Cable, 677 F.2d at 124 (emphasis added; citing General Motors Corp. v. FERC, 656 F.2d 791, 798 n. 20 (D.C.Cir.1981)).
 
 
 15
 As the Commission noted, Equitable and Equitrans in their August 1986 filing enumerated every item in the transfer. Since that time neither PPUC nor POCA has proffered a single item on the list as being improperly classified as subject to interstate rather than intrastate regulation. Instead, they have continued to question generally whether the transaction involved interstate or intrastate assets and to allege broadly that "Pennsylvania ratepayers [would] be adversely affected" by the reorganization. Brief of Petitioner PPUC at 17. While we recognize that a state regulatory agency has an interest in protecting the citizens of its state, the assertion of that interest through broad allegation--without proffer of specific foundation--is simply not enough to meet the material issue of fact requirement set out in the above cases. To hold otherwise would render the material fact requirement a nullity. Thus, we hold that FERC did not deny petitioner its statutory due process rights in refusing to hold a formal evidentiary hearing where petitioner's only claim to an issue of material fact is based on broad allegations without proffer of support.
 
 B. The Public Interest
 
 16
 Petitioner argues that FERC's permitting of the abandonment and granting of the certificate was not consistent with the public interest. Specifically, petitioner contends that FERC failed to apply the "comparative needs" test as set forth in Transcontinental Gas Pipe Line Corp. v. FPC, 488 F.2d 1325, 1328 (D.C.Cir.1973) (per curiam), cert. denied, 417 U.S. 921, 94 S.Ct. 2629, 41 L.Ed.2d 226 (1974) and later revised by FERC with revisions approved by this Court in Consolidated Edison Co. of New York v. FERC, 823 F.2d 630 (D.C.Cir.1987). We find no such failure.
 
 
 17
 Under the earlier formulation of the comparative needs test, the Commission "balanced the relative needs of the competing pipelines and their ultimate consumers as the principal index of the public interest." Transcontinental Gas Pipe Line, 488 F.2d at 1328. As petitioner recognizes, FERC has since modified the comparative needs approach by " 'a shift in the identification of the public interest, from the interest of only specific customers to the interests of the market as a whole, and in the determination of how the public's needs are best served.' " Consolidated Edison, 823 F.2d at 635 (quoting the FERC order there under review).
 
 
 18
 However the comparative needs test is phrased, it is only a step toward the ultimate question under section 7 of the NGA: whether the abandonment is supported by a proper finding that the "present or future public convenience or necessity permit such abandonment." 15 U.S.C. Sec. 717f(b). A similar test applies to the granting of the certificate of authority. FERC shall issue (with exceptions not here pertinent) a certificate if the applicant is able and willing to undertake the service and the service is "required by the present or future public convenience and necessity." 15 U.S.C. Sec. 717f(e).
 
 
 19
 Under either formulation of the subsidiary comparative needs test, FERC's actions in the present case are not inconsistent with our prior directive that "the public interest is the ultimate criterion under Sec. 7(b) and ... all factors relevant to the determination of which course of action best promotes the overall public interest must be considered." Transcontinental Gas Pipe Line, 488 F.2d at 1328. Furthermore, under the public convenience and necessity test applicants had the burden of establishing only that the public interest would not be disserved by the abandonment, Atlantic Ref. Co. v. Public Service Comm'n of New York, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959); affirmative proof of benefit to the public interest is not necessary to justify an abandonment, e.g., Consolidated Gas Supply Corp., 22 F.E.R.C. p 63,039, at 65,165 (1983). And, as we noted previously in the context of approving a Commission order permitting an abandonment, FERC has "explicitly shifted the identification of the public interest away 'from the interest of only specific customers to the interest of the market as a whole.' " Kansas Power & Light Co. v. FERC, 851 F.2d 1479, 1485 (D.C.Cir.1988) (quoting Felmont Oil Corp. & Essex Offshore, Inc., 33 F.E.R.C. p 61,333, at 61,657; and citing Consolidated Edison, 823 F.2d at 643).
 
 
 20
 Applying the relevant tests in this case, we cannot say that the Commission's determination that Equitable and Equitrans met the standard of public convenience and necessity, was unreasonable, arbitrary and capricious, or without support in the record. The Commission reasonably concluded that efficiency would result from segregating transmission and distribution functions into separate companies, thereby also eliminating conflicting or duplicative regulatory determinations. 42 F.E.R.C. at 61,141. The Commission next found that there would be no adverse effect to consumers from the reorganization since the reorganization was explicitly conditioned on the fulfillment of several protective conditions, including Equitrans' obligation to provide to Equitable interstate sales and service at the same rates as those at which Equitable had previously provided services. Id. at 61,143. It further observed that because Equitrans and Equitable would both be covered by open access provisions of Order No. 436, they would be free to contract for lowest cost gas sources, thus addressing petitioner's concern that Equitable would be a captive customer of the interstate family of companies. Id. at 62,141.
 
 
 21
 Finally, the Commission rejected POCA's claim that the reorganization would violate provisions of the Pennsylvania public utility law requiring state approval of the transfer of assets of utility companies regulated by the state. See 66 Pa.Cons.Stat. Sec. 1318(b) (Purdon Supp.1988). As the Commission noted, the transfer of facilities subject to federal regulation under the NGA is properly within the jurisdiction of FERC. As the Fourth Circuit stated in Public Service Commission of West Virginia v. FPC, 437 F.2d 1234 (4th Cir.1971),
 
 
 22
 [t]he subject with which we are concerned is the right to transport and to sell gas in interstate commerce. The right to acquire and the right to operate an interstate pipeline is an essential adjunct thereto. Under the Act, these matters are committed to the jurisdiction of the [Commission].... If the acquisition of rights in an interstate transportation line were subject to the veto of every state regulatory agency along the line, a single agency could seriously impair interstate commerce and the interests protected by the Act and prevent [the Commission] from performing its statutory duties.
 
 
 23
 Id. at 1238-39 (citations omitted).
 
 
 24
 In short, to set aside the Commission's judgment in this case would be to substitute our decision for that of the authorized agency, and this we cannot do. Cf., Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974) (discussing narrowness of "arbitrary and capricious" review).
 
 
 25
 Petitioner's subsidiary argument--that the Commission improperly shifted the burden of proof to PPUC and POCA--depends on petitioner's assertion that the Commission's decision was without record support. Having reviewed the record and found the Commission's conclusions amply supported, this contention must fail.
 
 III. CONCLUSION
 
 26
 We conclude that nothing presented to the Commission raised an issue of material fact and that no evidentiary hearing was therefore required. We further conclude that the Commission's decision was amply supported by the record in all particulars and was not arbitrary, capricious, or contrary to law. We therefore deny the petition for review.
 
 
 
 [1]
 See Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol, 50 Fed.Reg. 42,408 (1985), codified at 18 C.F.R. Parts 2, 157, 250, 284, 375 & 381 (1988), modified, Order No. 436-A [Reg. Preambles 1982-1985] F.E.R.C. Stats. & Regs. p 30,675 (1985), modified further, Order No. 436-B, III F.E.R.C. Stats. & Regs. p 30,688, reh'g denied, Order No. 436-C, 34 F.E.R.C. p 61,405, reconsideration denied, Order No. 436-E, 34 F.E.R.C. p 61,403 (1986), aff'd in part and vacated and remanded in part, sub nom., Associated Gas Distributors v. FERC, 824 F.2d 981 (D.C.Cir.1987) (affirming the substance of the order), cert. denied, --- U.S. ----, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988)
 
 
 [2]
 Interim Rule and Statement of Policy, III F.E.R.C. Stats. & Regs. p 30,761 (promulgating interim rules for Order No. 500), granting extension of time for the submission of comments, Order No. 500-A, 41 F.E.R.C. p 61,013, granting reh'g in part, Order No. 500-B, 41 F.E.R.C. p 61,024 (1987)